Sidney Leviss, J.
In this action to recover the unpaid balance of the purchase price for one modified model 7-24 FMC machine (hereinafter machine), sold and delivered by plaintiff FMC Corporation (hereinafter FMC), to defendant Seal Tape Limited, Inc. (hereinafter Seal), plaintiff moves, pursuant to CPLR 3211, to dismiss the counterclaims contained in the answer of the defendant on the ground that the written contract between the parties, by its terms, bars these counterclaims as a matter of law.
Plaintiff alleges that pursuant to an equipment order dated June 4, 1973, signed by Seal’s president, Seal agreed to purchase and FMC agreed to sell the machine which was to be used for the production of packing list pouches. In addition, in January and February of 1975 additional accessories and parts were sold and delivered to Seal by FMC. Although a certain amount has been paid, to date there is allegedly a balance due of $10,971.18 which plaintiff seeks to recover by this action.
Defendant’s first counterclaim alleges that at the time of the sale and as an inducement to defendant to purchase said machine, plaintiff warranted to defendant that said machine would produce pouches which would in all respects be equal to a sample; that defendant purchased the machine in reliance on said warranty; that the warranty was untrue and that the *1044 machine failed to produce the pouches as warranted and that defendant has been damaged in the sum of $22,540. The second counterclaim further alleges that when defendant discovered the breach of warranty it elected to rescind the sale and offered to return the machine to plaintiff, but said offer was refused. In addition to the return of the money which it paid on account and rescission of the contract, defendant seeks $22,540 as consequential damages.
Plaintiff contends that the counterclaims are precluded by virtue of the express written terms of its contract with defendant. The contract consists of one sheet with printing on both sides. The face of said writing contains the means of shipping and time of delivery, terms of payment, description of the machine, the parts to be included therein, the price and the signatures of acceptance of the seller and the buyer. The back of said contract is entitled "Terms And Conditions” and contains 11 numbered items. Item 11 specifies that the "acknowledgment of order constitutes the entire agreement between Seller and Buyer; and there are no understandings, representations or warranties of any kind, express, implied, statutory or otherwise, not expressly set forth herein.” Item 4 warrants the machine to be free from defects in material and workmanship under the normal use and service for a period of six months from date. of shipment and limits the seller’s obligations to repairing or replacing at its option any part found to be defective. It also, under certain circumstances, allows for refunding amounts paid by buyer on account of purchase price and cancelling any balance still owing on the equipment.
Item 4 further states in bold black capital letters that:
"THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATION OR LIABILITY ON THE PART OF SELLER.
* * *
"SELLER IN NO EVENT SHALL BE LIABLE FOR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT, INCLUDING WITHOUT LIMITATION, CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH (i) DELAYS IN DELIVERY, (Ü) SELLER’S PERFORMANCE, NONPERFORMANCE OR BREACH OF THIS CONTRACT, (ÍÜ) DEFECTS IN THE EQUIP *1045 MENT, FAILURE OF THE EQUIPMENT TO PERFORM PROPERLY OR NONCONFORMANCE OF THE EQUIPMENT WITH SPECIFICATIONS, OR (iv) THE OPERATION, USE, INSTALLATION, REPAIR OR REPLACEMENT OF THE EQUIPMENT.
"CONSEQUENTIAL DAMAGES FOR PURPOSES HEREOF SHALL INCLUDE, WITHOUT LIMITATION, LOSS OF USE, INCOME OR PROFIT, OR LOSSES SUSTAINED AS THE RESULT OF INJURY (INCLUDING DEATH) TO ANY PERSON OR LOSS OF OR DAMAGE TO PROPERTY (INCLUDING, WITHOUT LIMITATION, MATERIALS MANUFACTURED, PROCESSED OR TRANSPORTED BY THE USE OF THE equipment).”
Defendant claims that the plaintiffs attempt to limit its specific express warranties is in contradiction to the agreed terms between the parties. Seal claims that there was an express warranty made by the plaintiff for pouches, pursuant to a sample, discussed prior to signing the contract and confirmed by letter dated June 17, 1974 subsequent to the signing of the contract by the defendant, but prior to the signing of the contract by plaintiff. That letter states in part, as follows: "It is our understanding that the subject machine will produce a finished pouch identical in construction to the enclosed sample.”
Defendant concedes that the face of the contract containing the express warranty for production of pouches does not have the words "per sample”, but argues that such warranty was made and is enforceable as a result of said letter and agreement in accordance with section 2-202 of the Uniform Commercial Code. Defendant further argues that the limited and exlusive remedy of repair or replacement provided for in the contract failed of its essential purpose, since allegedly plaintiff did not make repair or replacement as required by the contract. It is thus claimed that plaintiff is not entitled to rely on the contractual exclusion of consequential damages.
The issue presented for this court’s determination is whether there was in fact an express warranty that the goods delivered be as "per sample”. A sample or model which is made part of the basis of the bargain can create an express warranty that the whole of the goods shall conform to that sample (Uniform Commercial Code, § 2-313 [1] [c]). By virtue of the letter sent by Seal to FMC, defendant seeks to prove such an express warranty pursuant to section 2-202 of the Uniform Commercial Code.
*1046 Section 2-202 of the Uniform Commercial Code provides that terms which are
"set forth in a writing intended by the parties as a final expression of their agreement * * * may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.
"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.”
The determination as to whether a writing was intended as a complete and exclusive statement of an agreement is a function of the court (Pennsylvania Gas Co. v Secord Brother, 73 Misc 2d 1031, affd 44 AD2d 906). The Practice Commentary to section 2-202 of the Uniform Commercial Code by Alfred A. Buerger and William J. O’Connor, Jr. (McKinney’s Cons Laws of NY, Book 6216., p 157) advises that
"[w]hen the seller wishes to avoid the possibility of admission of evidence of additional terms such as warranties to explain or supplement a written contract for sale he should include in the contract a clause similar to the following:
'this writing contains the entire agreement between THE BUYER AND THE SELLER. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF’ ”.
Moreover, the New York annotations to section 2-202 state that "[i]t also seems likely that the partial integration concept of this Code provision would succomb to a 'merger clause’ ('this writing contains the entire agreement between buyer and seller and no warranties have been made other than those stated herein’).” (McKinney’s Cons Laws of NY, Book 62V2, Uniform Commercial Code, § 2-202, p 158.)
Inasmuch as similar type provisions have been made in the agreement in issue (see item 4 and item 11 quoted above), this court affirmatively finds that the contract was a complete and exclusive statement of the terms of the agreement and aB such may not be explained or supplemented by evidence of consistent additional terms (see Uniform Commercial Code, § 2-202; Thomas v Scutt, 127 NY 133; Bakal v Burroughs Corp., 74 Misc 2d 202). Thus, since in the written contract there was no express warranty that the goods had to conform to a specific *1047 sample, the defendant’s first two counterclaims which seek damages and rescission for breach of such a warranty, are without merit and must be dismissed.
Although the papers before the court raise a question as to whether or not defendant can rescind the contract and recover consequential damages as a result of the plaintiff’s alleged breach of its agreement to repair or replace defective parts, in light of the fact that there is no counterclaim alleging such a cause of action in defendant’s answer, a discussion of that issue by the court at this time would be purely academic.
Accordingly, the plaintiff’s motion to dismiss the counterclaims of the defendant is granted with leave given to defendant if it be so advised to amend its answer within 20 days after service upon it of a copy of the order to be entered herein.