ALDON INDUSTRIES, INC., Plaintiff,

v.

Abraham BROWN, Sylvia Brown and A.I. Brown, Inc., Defendants.

No. 84 CIV. 2265 (PKL).

United States District Court, S.D. New York.

Nov. 21, 1986.

---

**9.** The issue of prejudgment interest shall be determined with plaintiffs' motion for attorney fees.

Kudman & Trachten, New York City (Gary Trachten, of counsel), for plaintiff.

Irving P. Seidman, P.C., New York City (Lawrence H. Silverman, of counsel), for defendants.

LEISURE, District Judge:

The parties in this action have cross moved for partial summary judgment. Plaintiff (hereinafter also referred to as "Aldon") seeks summary judgment on its claim for unpaid invoices for carpet shipped between mid–1983 and February, 1984, in the amount of $336,592.67 (the "Schedule A goods") plus interest. Plaintiff has also moved for summary judgment with respect to defendants' counterclaims. Defendant A.I. Brown, Inc. has moved for summary judgment on plaintiff's claims for unauthorized discounts and lost profits.

### Plaintiff's Motion

Uniform Commercial Code ("UCC") § 2–607(1) provides, "The buyer must pay at the contract rate for any goods accepted." UCC § 2–607(4) provides, "The burden is on the buyer to establish any breach with respect to the goods accepted." Defendants argue that their counterclaims have established breaches with respect to goods delivered.

In Defendants' Answers to Plaintiff's First Set of Interrogatories (the "Answers"), defendants admitted that: defendants ordered all the Schedule A goods (Nos. 16–17); the Schedule A goods were received (No. 9); defendants did not pay for the Schedule A goods (No. 11); defendants did not refuse or reject delivery of the Schedule A goods (No. 14); and the Schedule A goods were resold in the usual course of defendants' business at the usual markup (No. 22).

Defendants' second and third counterclaims relate to claimed breaches involving shortages in carpet length and underweight goods. Defendants' Answers make clear that their assertions as to these counterclaims are based on estimates (Nos. 64, 68). In response to plaintiff's motion, defendants have offered no proof of damages with respect to these counterclaims. Instead, defendants have relied on argument of counsel, which ignores the admissions contained in defendants' Answers. (*See* Defendants' Memorandum of Law at 5–6).

▮ Fed.R.Civ.Proc. 56(e) requires that the opposing party "present some evidence which supports the bald assertion that there is a dispute." *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972).

> A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.

*Id.* In *Noreli Industries, Inc. v. Kleinert's, Inc.,* 57 A.D.2d 792, 394 N.Y.S.2d 687, 688 (1977), it was held that a claim and affirmative defense predicated thereon were properly dismissed where there was no showing of any damage suffered. *Accord Farrey's, Inc. v. Supplee-Biddle Hardware Co.,* 103 F.Supp. 488, 490–91 (E.D.Pa.1952). The situation is the same in this case. Therefore, defendants' counterclaims and affirmative defenses based on carpet shortages and underweight goods must be dismissed. *See also Lasker v. Bear, Stearns & Co.,* 757 F.2d 15, 19 (2d Cir.1985) ("[A] plaintiff must always bear the burden of demonstrating that there were at least some damages."). *Cf. Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (Conclusory allegations are insufficient to satisfy the requirements of Rule 56(e).).

Defendants' fourth counterclaim for $3750 due to alleged substitution of yarn must also be dismissed. By failing to answer plaintiff's First Request for Admissions, the following matters were admitted as to the fourth counterclaim pursuant to Fed.R.Civ.P. 36.: None of the disputed carpet has been returned by Brown's customers (No. 1); Brown has not received any written complaints (No. 2); Brown has not issued any credits or refunds for the disputed carpets (Nos. # 3–4). In short, defendants have again failed to demonstrate any damage. Argument of counsel is plainly insufficient. *See* Defendants' Memorandum of Law at 7–8. The fourth counterclaim and affirmative defense must be dismissed.

Defendants' first counterclaim involves alleged overcharges for freight. Defendants' Answer and Counterclaims ¶¶ 16–22. Defendants assert that plaintiff represented to defendants that "the portion of the price per square yard of carpeting sold by plaintiff to defendant A.I. Brown Inc. which was attributable to shipping and handling costs and was being charged to defendant A.I. Brown Inc. as a portion of its wholesale price, was approximately *10 cents to 20 cents per square yard,* depend-

ing on the quantity and unit weight of the goods shipped." *Id.* at ¶ 17 (emphasis added). The overcharges are alleged to have begun in 1980 and continued to February, 1984. *Id.* Defendants do not rely on any written representations, but rather base their counterclaim on oral statements allegedly made by agents of the plaintiff.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* 106 S.Ct. at 2512. *See also Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). " 'On summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citation omitted). Where, however, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Id.,* 106 S.Ct. at 1356 (citation omitted). In the instant case, a rational trier of fact could not conclude that plaintiff's agents represented that defendants' shipping rate would be approximately 10 to 20 cents per square yard.

When Elihu Brown was asked during a deposition whether defendants had any agreements with Aldon concerning freight charges, he responded, "None that I know of." Deposition of Elihu Brown, July 26, 1984, at 4–5. He was then asked whether Aldon ever made "any representations to you about how much Aldon would include in its price for carpets that represented the cost of shipping carpets to Brown?" E. Brown responded that although there was discussion about freight, "I do not think

anyone ever gave us an exact amount." *Id.* at 5. He stated that Aldon's representatives periodically "assured me that I was being charged the lowest possible freight," but he admitted that they did not explain what they meant in any greater detail. *Id.* at 5–6. Although defendants' counsel has relied on other portions of E. Brown's deposition, these segments relate only to *Brown's understanding* of the freight policy, not to any specific representations made by plaintiff's agents. Deposition, July 26, 1984, at 6–7; Memorandum of Law at 11.

The only evidence to support the allegation of the counterclaim is E. Brown's statement that "[s]ometimes [Aldon's salesman] would say, you are getting this for 11, 12, 15, 20 cents. He would use those price points." *Id.* at 19. E. Brown then stated that he could not recall when these representations were made and that he could not recall with specificity how many times these representations were made. *Id.* at 19–20. Upon further questioning, he stated that Aldon's salesman never told him in dollar and cent amounts what Aldon was charging him for freight, but only gave him a range of rates. *Id.* at 20. Later during the same deposition, E. Brown stated that the salesman never discussed the freight rate in an exact dollar figure. *Id.* at 52. During a subsequent deposition, he indicated that when he began doing business with Aldon, he was told that Aldon "would only charge Aldon cost for freight." Deposition, October 4, 1984, at 217. E. Brown stated that he did not ask for an explanation of the term, "Aldon cost for freight."

At the Deposition of Abraham I. Brown on July 11, 1984, A. Brown was asked whether the Aldon salesman told defendants how much Aldon was charging in dollars and cents for freight. He responded, "He didn't tell us. We could tell ourselves. We told him." Deposition at 34. Moreover, A. Brown stated that "we had no conversation with anybody else" at Aldon except the salesman, Tom Kenealy. *Id.* Later in the same deposition, A. Brown indicated that there was no conversation in which someone associated with or employed by Aldon told defendants a specific dollar and cents amount that was being charged for freight. *Id.* at 48–49. He explained, "Not a specific charge—a specific charge for freight was never told us. A price was given to us: this will be your price delivered" for the total of goods and freight. *Id.*

During the deposition of Benjamin Rosenberg, Brown's general manager, Rosenberg was asked whether any of Aldon's agents ever represented to defendants that the shipping rate being charged by Aldon was ten to twenty cents per square yard. Rosenberg answered in the negative. Deposition, July 2, 1984, at 32. Rosenberg also indicated that while he had thought defendants were getting the "lowest possible" shipping rates from Aldon, he did not have specific dollar and cents amounts in mind as to rates. *Id.* at 28. He also stated that he had never heard directly or indirectly of an *oral* price quotation by Aldon to defendants that was broken down to identify separately the cost of goods and the cost of shipping. *Id.* at 96. Moreover, Rosenberg testified that Aldon's *written* quotations uniformly referred to a delivered price without any breakdown between cost of goods and cost of freight. *Id.* at 97.

Counsel for defendants has relied on a passage from the deposition of the Aldon salesman, Kenealy. Deposition, undated, at 93–95; Defendants' Memorandum of Law at 11. Kenealy stated that he told defendants that they would receive "the lowest possible freight cost." *Id.* at 94–95. But he testified that he represented simply that "[w]hatever it cost Aldon it would cost [Brown]." *Id.* at 95. Kenealy testified that he did not describe "the lowest possible freight cost" in any other way. *Id.* Therefore, his testimony indicates that he did not refer to specific freight rates. In addition, the testimony of plaintiff's president, Bernard Barg, also relied on by defendants, fails to support defendants' allegation as to specific rates. Deposition. undated, at 175–76.

■ Defendants have offered only "a *scintilla*" of evidence to support the misrepresentation element which is at the heart of their first counterclaim. *Anderson*, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). Defendants' evidence of misrepresentations regarding specific freight rates being charged is insufficient under Rule 56(e) to demonstrate a need for trial. There are no "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*, 106 S.Ct. at 2511.[1]

Therefore, summary judgment dismissing the first affirmative defense and counterclaim is appropriate.[2]

## Defendants' Motion

■ Defendants have moved for summary judgment dismissing plaintiff's fourth claim for unauthorized deductions and plaintiff's fifth claim for lost profits. Plaintiff has not submitted a statement under Civil Rule 3(g) for the Southern District of New York with respect to defendants' cross motion. As a result, the material facts contained in defendants' 3(g) statement must be deemed to be admitted. Plaintiff's fourth and fifth claims are thus dismissed.

1. The argument of defendants' counsel has deviated from the allegations of defendants' first counterclaim. *Compare* Answer and Counterclaims ¶ 17 and Defendants' Memorandum of Law at 11–14. To the extent that defendants would now recharacterize their first counterclaim to allege that plaintiff's agents made misrepresentations by stating that plaintiff would bill defendants for freight at Aldon's cost, defendants' showing remains plainly insufficient. Defendant has offered no evidence of Aldon's actual shipping costs other than projections made by defendants based on defendants' own shipping experience.. *See, e.g.,* Deposition of E. Brown, July 26, 1984, at 11–14.

2. Plaintiff's invoices contained the following merger clause: "ALDON IS NOT BOUND BY REPRESENTATIONS OR PROMISES NOT EXPRESSLY SET FORTH IN THIS ORDER. NO COURSE OF PRIOR DEALINGS BETWEEN THE PARTIES AND NO USAGE OF TRADE EXCEPT AS REFERRED TO HEREIN SHALL BE RELEVANT OR ADMISSABLE TO SUPPLE-

## Conclusion

Plaintiff's motion for partial summary judgment on its claim of $336,592.67 for non-payment of goods is granted and defendants' counterclaims are dismissed. The parties have not briefed the question of an award for interest accrued to date and the Court therefore reserves judgment on that issue.

SO ORDERED.

MENT, EXPLAIN OR VARY ANY OF THE TERMS OF THIS ORDER." The UCC recognizes the validity of such merger clauses. *See* UCC 2–202, Comment No. 3; *FMC Corp. v. Seal Tape Ltd.,* 90 Misc.2d 1043, 396 N.Y.S.2d 993, 996 (Sup.Ct.1977) (Determination as to whether writing was intended as complete and exclusive statement of agreement is a function of the court.); *General Motors Acceptance Corp. v. Fairway Dodge Sales, Inc.,* 80 A.D.2d 740, 437 N.Y.S.2d 171, 173 (1981) (Writing intended by parties to be a final and exclusive statement of their agreement may not be contradicted by parol evidence); *Dept. of Transportation v. Westmoreland Engineering Co.,* 87 Pa. Cmwlth. 285, 487 A.2d 78, 84 (1985) ("Parol evidence is not admissible to alter or vary the terms of a contract which has been reduced to an integrated writing."). Thus, to the extent that defendants' first counterclaim sounds in contract, it is barred by the merger clause.